No. 3835

Second Circuit

LUDD v. VAN HOOSE ET AL.

(July 5, 1930. Opinion and Decree.)
(July 31, 1930. Rehearing Refused.)

Herndon & Herndon, of Shreveport, attorneys for plaintiff, appellant.

Jackson & Smith, of Shreveport, attorneys for defendants, appellees.

ODOM, J. This appeal is by plaintiff from a judgment rejecting his demands for compensation for disability alleged to have resulted from an injury received while at work for the defendant, Van Hoose, at a cotton gin. Plaintiff originally asked for compensation for three hundred weeks, but before this court his counsel ask for only eighteen weeks, plus $143 for hospital and surgical expenses.

The facts briefly stated are that the plaintiff, while at work for defendant Van Hoose on September 7, 1929, while engaged with another colored man in loading a bale of cotton onto a truck, strained himself to such an extent that he heard something "tear loose" in the inguinal region. This strain was caused when the other laborer lost or loosed his hold on the bale of cotton, which threw the weight on plaintiff. Plaintiff immediately told his co-laborer that he was hurt and could work no longer. Mr. Lipscomb, superintendent of the gin, who was on the premises at the time, was also immediately informed that plaintiff had hurt himself, and he sent plaintiff home and put another man in his place. That was on Saturday, the 7th. Plaintiff did not return to work during the following week, and on Monday, the 16th, Mr. Van Hoose, the defendant, called him up and asked him why he did not come back to work, and plaintiff told him that he was sick. Mr. Van Hoose then told plaintiff to come down so that he could find out what was the matter with him. Van Hoose says that when plaintiff came to him he seemed to be suffering and said that he had hurt himself while lifting a bale of cotton at the gin, and that he had a knot in his groin. Defendant then gave plaintiff light work for two or three days, after which plaintiff told him he could work no longer. Defendant then sent him to Dr. Harris who, upon examination, found that plaintiff was suffering from a well-developed inguinal hernia and advised an immediate operation. On being advised by Dr. Harris that an operation was necessary, defendant sent plaintiff to the Charity Hospital where he was examined by Dr. Boone, who confirmed or concurred in Dr. Harris' diagnosis. The operation was scheduled to take place at the Charity Hospital, but, for some reason, plaintiff left there and went back to Dr. Harris who performed what is conceded to be a successful operation for hernia.

When plaintiff went to the Charity Hospital, he was examined by Dr. Boone who got from him a history of the case. Plaintiff told Dr. Boone that he had been injured while handling a bale of cotton at defendant's gin, and told him further that he had been ruptured some two or three years before, and that since that time he had had a small knot in his groin about the size of the end of his thumb. Plaintiff says that he did not tell Dr. Boone he had been ruptured previously, but admits that he said he had a knot in his groin. We have no doubt that plaintiff told Dr. Boone what the doctor says he told him; but, in so far as the issues involved are concerned, it makes no difference what he told the doctor, in view of the facts which we shall presently state.

Up to the day on which plaintiff was lifting the bale of cotton and felt something "tear loose," as he expresses it, he was able-bodied and did steady manual labor, except at short intervals when he was afflicted with indigestion. He had worked

for defendant at his gin during ginning seasons for four or five consecutive years, and there is no suggestion that he was not a good hand. Between ginning seasons, he hauled fertilizer and worked gardens and flower yards for white people. He suffered no pain or inconvenience from the small knot, which he admits was in his groin, until the day on which he was lifting the cotton; but, from that day and moment up to the time he recovered from the operation, he was disabled and wholly incapacitated to perform any work of a reasonable character.

Now the defense is that plaintiff was afflicted with hernia at and previous to the moment he says he sustained the injury on September 7th, the contention that he had hernia being based upon the fact that plaintiff had a small knot in his groin. It is conceded, however, that he had theretofore suffered no inconvenience or disability, and conceded further that thereafter he was disabled.

The defense would unquestionably be good if it were true that plaintiff had an affliction, whether a hernia or some other, previous to the accident, which had developed to such stage or extent as to produce disability and, if it were true, that the accident had no connection with the disability complained of. But such is not the case.

If it be true that the knot in plaintiff's inguinal region was what men learned in the medical profession would call a hernia (these doctors do not enlighten us on that point), the facts are that, whatever it was, it had given him no trouble, produced no inconvenience or disability; and the further facts are that the moment the weight of the bale of cotton was thrown upon him, bringing him under a strain, plaintiff felt a tearing or rupture of the tissues in the inguinal region which produced immediate disability, and thereafter he had a well-defined, well-developed hernia, the only relief from which was an operation. If plaintiff had hernia already, it was too slight and insignificant to produce any ill effects. It was only in process of development and had not developed to such an extent as to produce disability. Let it be conceded, therefore, that plaintiff was afflicted with hernia. The "inevitable rupture" did not take place until he strained himself lifting the bale of cotton.

Substituting the word "hernia" for the word "aneurism," we express our view of the issue here involved in the language of the organ of the court in the case of Hicks et al. v. Meridian Lumber Co., 152 La. 975, 94 So. 903, 904:

"It is quite immaterial for the purposes of this case whether the alleged strain brought on the aneurism, or merely hastened the inevitable rupture; for this court would allow compensation in either case."

Able counsel for the defendant are familiar with the jurisprudence. We quote the following from their brief:

"We know that there are a number of cases holding that where an employee has a dormant disease or an undeveloped affliction, he can recover compensation if the dormant disease is aroused or the affliction is developed in an accident to such an extent that the employee becomes disabled. We contend that there is an obvious distinction between cases of that kind and a progressive hernia. In the case of dormant disease the accident arouses the disease and puts it in motion. In the case of an undeveloped affliction, the accident causes the affliction to become active."

The "obvious distinction" which counsel discover between the reported cases and the one at bar is not at all obvious to the members of this court. They say that her-

nia is a disease which progresses and will finally produce disability. Even so, the settled jurisprudence involving compensation cases is that, where an employee is afflicted with a disease which will ultimately and inevitably disable him, even in a short time, if his disability is hastened by an accident sustained while at work in the course and scope of his employment, he is entitled to compensation. The jurisprudence is so well settled on this point that citation of authority is unnecessary.

Counsel for defendant seem to think that plaintiff's time to fall out had come; that the hernia was in process of development, and that he might have become disabled on this very day, even though he had not been lifting a bale of cotton. That may be true, but it is quite significant that he succumbed just as the weight of the bale of cotton was thrown upon him.

Plaintiff was totally disabled for at least eighteen weeks, and is entitled to compensation for that length of time, fixed at 65 per cent of his weekly wage, which was $18; he is also entitled to $143 for surgical and hospital expenses.

For the reasons assigned it is ordered and decreed that the judgment appealed from be reversed; and now ordered and decreed that plaintiff have judgment against and recover from defendant Gordon W. Van Hoose, and United States Casualty Company in solido, compensation at $11.70 per week for eighteen consecutive weeks, beginning on September 21, 1929, with legal interest on each weekly payment from the time due until paid, and, in addition thereto, the sum of $143 for surgical and hospital expenses, together with all costs of this suit in both courts.