### NELSON v. BATEMAN CONTRACTING CO. et al.*

### No. 4372.

Court of Appeal of Louisiana. Second Circuit.

Feb. 6, 1933.

*Rehearing denied March 10, 1933.

Overton, Dawkins & McSween, of Alexandria, for appellants.

J. B. Nachman and Isaac Wahlder, both of Alexandria, for appellee.

### DREW, J.

Plaintiff instituted this suit under the Workmen's Compensation Act of Louisiana (Act No. 20 of 1914 as amended), to recover 65 per cent. of his weekly wages for a period not to exceed four hundred weeks, with legal interest thereon, and for $150 medical bill. He alleged total permanent disability to perform labor of any reasonable character and that his condition was due to an injury received in an accident that arose out of his employment and within the course of his employment.

The defense is that there was no accidental injury and that plaintiff's present condition is not due to an injury received in an accident, but is due to a long-standing arthritis of the sacroiliac joint resulting from some focal infection.

The lower court rendered judgment for plaintiff as prayed for, and defendants have appealed.

It is admitted that plaintiff was in the employ of the defendant contracting company on the date of the alleged accident and injury and that his alleged cause of action falls within the contemplation of the Workmen's Compensation Act of Louisiana. It is likewise admitted that plaintiff's wage was $2 per day or $12 per week at the time of the alleged accident and injury.

The evidence is conclusive and undenied in the record that the accident occurred and that plaintiff was injured and was sent by the foreman of defendant company to its doctor for treatment; also, that the defendant paid to plaintiff compensation in the amount of $24. Therefore, the sole remaining question for determination is whether plaintiff's present condition of total disability to perform labor of any reasonable character, which is likewise not disputed, is due to the injury received in the accident or to arthritis caused by some focal infection.

Plaintiff's employer was engaged in operating a gravel pit, and plaintiff had been employed at this pit for five years previous to the date of the accident. He had never lost a day from work on account of sickness during that time, and although the labor he performed was of the heaviest kind, all his fellow workers who testified, as well as his

foremen, say he was an exceptional hand and no one had ever heard him complain of any ailment or pain during that time.

On the morning of May 14, 1931, he was engaged in helping to move some machinery, and in preparation therefor it was necessary to move some heavy cross-ties weighing some two to three hundred pounds. His fellow workman had placed one end of the tie on his shoulder, and when plaintiff was placing the other end on his shoulder the ground beneath his feet gave way, causing him to fall on hard ground on his back, and as he struck the ground the cross-tie rolled off his shoulder. He brought himself to a sitting posture and remained there for several minutes, when he arose and made it to a shade tree near by, where he remained for about thirty minutes, at which time his foreman discovered him and sent him home. A day or two later he was sent to a doctor by his employer, who treated him for thirty days and suggested that he return to work, which he did. Upon trying to work he discovered that he was not physically able to do so. He then returned to the doctor, who requested his employer and the insurance company to allow him to reopen the case, which request was refused. However, as plaintiff did not improve, the defendants sent him to another doctor, who examined him, X-rayed him, and possibly gave him some treatment.

From the day of the accident until the date of trial plaintiff has been unable to perform any kind of work and the defendants do not contend that he is able to perform any kind of work. The doctor who first examined and treated him diagnosed his condition as a sprain in the sacroiliac region of the back. His condition on the day of trial was that he had to walk with a cane and in walking twisted his body and rotated his spine. He moved his feet in a sort of shuffling motion, not picking them up clear of the ground. He is unable to bend forward or sidewise without great pain and cannot even then bend as a normal person should.

There are four doctors who testified for plaintiff that in their opinion his injury and condition was due to trauma received in the accident. There are three doctors who testified for defendant who believe his condition is due to arthritis caused from some focal infection. Plaintiff's doctors are positive that the condition of plaintiff is due to a fracture of the transverse process of the second lumbar vertebra and a crushing fracture of the fourth lumbar vertebra and other injuries to the sacroiliac and other areas of the back. They are positive that arthritis, even of long standing, could not have all at once affected the plaintiff as he was affected in the accident. Plaintiff's doctors base their opinion upon a physical examination, as well as the X-ray pictures. Defendant's doctors read the same X-ray pictures entirely different and, although they find the pictures disclose an abnormal condition, they are of the opinion that it is caused from arthritis. Eminent doctors for plaintiff say the pictures clearly disclose a fracture, and equally eminent doctors for defendant say the pictures fail to disclose a fracture, and attempt to explain away what they admit the pictures apparently show.

We have grown accustomed to this wide difference of opinion among some of our leading doctors as to what X-ray pictures show, as well as to what a physical examination discloses. We meet with this situation in almost every compensation case. It is needless to say that whereas the medical testimony should be of great help to the court in these cases, on account of wide differences of opinion, which it is very hard for one not versed in medical science to understand, very often the medical testimony is of no benefit to us at all. We know of no good reason for accepting the testimony of one reputable doctor who testified that an X-ray picture discloses a fracture, over another equally reputable doctor that it does not disclose a fracture. The result is we are forced to look to the lay testimony as to the accident and the condition of the injured man from that time on.

In this case, however, regardless of the conflict as to what the X-ray picture discloses, all the doctors admit that a blow on the small of the back such as was received by plaintiff might accelerate a latent infection and make it active where up to that time it had been inactive. And under the facts in this case, the least harm we could find the accident did would be to hold that it accelerated an infection that up to that time was giving plaintiff no trouble, and if that be true, plaintiff would still be entitled to compensation as prayed for. He was apparently well and performing very hard manual labor up to the very minute of the accident, and from that time until now has been entirely incapacitated to perform any labor of any kind.

In this case we are not informed by the doctors for the defense where the focal infection was located or what the infection was. They are satisfied to say the condition of plaintiff was caused from some focal infection. It was intimated that plaintiff might have syphilis, but the proof is conclusive that he was not suffering from that disease.

We are convinced that the plaintiff has made out his case with a clear preponderance of the evidence and that the judgment of the lower court is correct.

It is therefore affirmed, with costs.