196 So. 23

ROBICHAUX v. REALTY OPERATORS, Inc.

No. 35602.

March 4, 1940.

Rehearing Denied April 29, 1940.

Habans & Coleman, of New Orleans, for applicant.

Dart & Dart and H. Grady Price, all of New Orleans, for respondents.

O'NIELL, Chief Justice.

This is a suit for workmen's compensation for an injury which resulted in the amputation of the plaintiff's right index finger. The judge of the civil district court, after hearing the evidence, rejected the plaintiff's demand. The court of appeal affirmed the judgment. Robichaux v. Realty Operators, Inc., 191 So. 326.

The defendant contends, first, that the injury to the plaintiff's finger was not

caused by an "accident", as defined by the statute,—Section 38 of Act No. 20 of 1914, as amended by Act No. 38 of 1918, and, second, that the employer's business or occupation, in the course of which the plaintiff was performing services arising out of and incidental to his employment at the time of the alleged accident, was not a hazardous business or occupation, in the meaning of the statute,—Section 1 of Act No. 20 of 1914.

The defendant owns and operates three large sugar factories in different parishes in Louisiana, and is a part owner of another large sugar factory. In connection with this extensive business of manufacturing sugar the defendant plants, cultivates and produces for its mills more than 9,000 acres of sugar cane on its plantations. The plaintiff was employed on the defendant's Greenwood Plantation, in Terrebonne Parish, in the harvesting season, at the time of the accident. His work consisted of piling up the sugar cane on the rows so that it could be picked up by a portable derrick, or cane loader, and loaded into carts, which hauled it out to the highway, where it was transferred to trucks, by means of a stationary derrick, and was sent on to the defendant's factory on another plantation, seventeen miles away. The method by which the plaintiff gathered the cane into piles on the dirt rows was to place the end of a six-foot pole—nearly three inches in diameter—under the row of cane, and lift the other end of the pole and thus shove the cane forward into a pile. The plaintiff testified that, on the occasion of the injury, while he was piling

the cane on the rows, and at the same time was trying to cross a cross-drain, or mud drain, as he called it, a pile of cane rolled back upon the pole and caused a severe shock or jar in the palm of his hand, or at the place which the doctors have described as "the palmar surface of the proximal phalanx of the right index finger". The plaintiff already had a callous growth at that place, which was developing into an abscess. The ailment was caused or at least aggravated by the plaintiff's chopping wood for his household use, several weeks before the accident happened. The plaintiff did no work after the accident happened. Three days afterwards he called upon the overseer for $4 with which to go to a doctor. The finger was swollen then to twice its normal size. The overseer asked what had caused the injury, and the plaintiff replied that he had made an abscess in his hand by chopping his winter wood. He called upon a doctor in the nearest town, but as it was then nighttime the doctor only dressed the finger and requested the patient to call again the next day. He did not call again, but eight days afterwards he went to the Charity Hospital in New Orleans, where, after several days of treatment and diagnosis, it was found that the case was one of osteomyelitis, for which nothing could be done but to amputate the finger. It was amputated on the sixteenth day after the patient was admitted to the hospital.

It is argued for the defendant that the plaintiff's statement concerning the alleged accident is discredited by the fact that there was no reference to an

accident in the record which was made on the "History Sheet" when the plaintiff entered the hospital. But, when we consider that the record was made not by the plaintiff himself but by some one else on information furnished by the plaintiff,—and when we consider that he has less than the average degree of intelligence,—some allowance must be made for the failure to mention the accident in the recording of the history of the case. It is argued also that the fact that the plaintiff did not mention the accident when the overseer asked him what was the cause of the injury discredits the plaintiff's testimony concerning the accident. But a reasonable explanation for that is that the plaintiff in his answer to the overseer mentioned only the cause which he believed was the original and principal cause of his trouble. The record on the hospital's "History Sheet" indicates that, about five months before the record was made, there were symptoms of an incipient ailment at the place where the abscess afterwards developed. But that means only that the accident that happened when the pile of sugar cane rolled down upon the pole which the plaintiff held in his hand was not the sole cause of the disability which resulted from the accident. The case, therefore, comes within the rule that an employee who is disabled by an accident is not to be denied the benefit of the workmen's compensation law by reason of his having been afflicted already with a disease which in its ordinary progress might have caused the disability eventually even without any accident, and because, therefore, the accident merely superinduced the dis-

ability. Behan v. John B. Honor Co., 143 La. 348, 78 So. 589, L.R.A.1918F, 862; Fox v. United Chemical & Organic Products Co., 147 La. 865, 86 So. 311; Hicks v. Meridian Lumber Co., 152 La. 975, 94 So. 903; Durrett v. Woods, 155 La. 533, 99 So. 430; Jackson v. Travelers' Ins. Co., 180 La. 43, 156 So. 169; Connell v. United States Sheet & Window Glass Co., 2 La.App. 93; Wilkinson v. Dubach Mill Co., 2 La.App. 249; Connell v. Gilliland Oil Co., 2 La.App. 435; McMullen v. Louisiana Central Lumber Co., 2 La.App. 773; Becton v. Deas Paving Co., 3 La. App. 683; Broussard v. Union Sulphur Co., 5 La.App. 340; Brooks v. Board of Com'rs of Port of New Orleans, Orleans No. 8891; Taylor v. Southern Engineering Construction Co., 13 La.App. 292, 125 So. 877; Brooks v. Lewis-Chambers Construction Co., 13 La.App. 402, 128 So. 321; Ludd v. Van Hoose, 14 La.App. 276, 129 So. 375; Sutton v. New Orleans Public Service, 14 La.App. 684, 130 So. 859; Danzy v. Crowell & Spencer Lumber Co., 16 La.App. 300, 134 So. 267; Anderson v. Louisiana Oil Ref. Corp., 16 La.App. 294, 134 So. 343; Wright v. Louisiana Ice & Utility Co., 19 La.App. 173, 138 So. 450; Nelson v. Bateman Contracting Co., La. App., 145 So. 808; Richey v. Union Paving Co., La.App., 151 So. 657; Turner v. New Orleans Ice Cream Co., La.App., 154 So. 773; Landers v. New Iberia Motor Co., La.App., 155 So. 278; Renfrow v. Caddo Parish Police Jury, La.App., 155 So. 291; Vilce v. Lake Charles Stevedores, La.App., 155 So. 297.; Daily v. Trans-American Const. Co., La.App., 157 So. 290; Ozbolt

v. Weber-King Mfg. Co., La.App., 193 So. 383.

■ There is, of course, some doubt that an accident, such as the plaintiff described in his testimony, actually happened; just as there is, essentially, some such doubt in all cases where the injury complained of might have resulted from some other cause, and where the alleged accident did not at first seem to be a serious accident, and particularly where the plaintiff is the only person who could have witnessed the accident. The testimony of the plaintiff in this case seems plausible and is corroborated in some measure by the disastrous consequence and the events which followed so quickly after the alleged accident. It is not necessary that an accident should seem immediately to be something serious in order to come within the definition in Section 38 of Act No. 20 of 1914, as amended by Act No. 38 of 1918. The word "accident" is there defined as an unexpected or unforeseen event, happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury. That is what happened to the plaintiff in this case, unless he testified falsely. Our conclusion is that his testimony and the corroborating circumstances furnish sufficient proof that the injury which resulted in the loss of his finger was caused, or superinduced, by an accident, in the meaning of the statute.

■ The question whether the employer's business in which the plaintiff was performing services at the time of the accident was a hazardous or a non-hazardous business depends upon whether such services as the plaintiff was performing should be classed as appertaining to the manufacturing department or as appertaining to the farming department of the business. To classify the services as belonging to either one or the other of the two departments of the defendant's business may seem arbitrary; but it is less arbitrary, and more appropriate, to classify the services as belonging to the manufacturing department than it would be to classify them as belonging to the farming department of the business. The service which the plaintiff performed,—gathering the sugar cane into separate piles for the loader to pick up,—was the initial step in the delivering of the cane to the factory. The cane had been stripped of its leaves, and topped, and severed from the soil by the cane cutters, and was therefore a finished product, as far as the farming or agricultural process was concerned, and was completely prepared for delivery to the mill, before the plaintiff's services began. Farming is not a hazardous business or occupation, and is therefore not governed by the workmen's compensation law; but the operation of a factory or mill, including, specifically, the operation of a syrup mill, sugar house or sugar refinery, is declared to be a hazardous business or occupation, in Act No. 20 of 1914, Sec. 1, subd. 2, Dart's Stat. § 4391. A farmer's employee who is engaged in delivering a farm product to the market, or to a buyer, is employed in the farming business; but a manufacturer's employee who is engaged in delivering a farm product to his employer's factory for conversion

into a manufacturer product is employed in the manufacturing business. The question whether an employee engaged in delivering a farm product to a factory for conversion into a manufactured product is employed in the farming business or in the manufacturing business arises only in cases like this, where the employer is one who is both the farmer and the manufacturer. And in such cases it has been decided that the employment is in the manufacturing end and not in the farming end of the employer's business or occupation. In Dartez v. Sterling Sugars, Inc., 7 La. App. 414, quoted with approval in Comeaux v. South Coast Corporation, La. App., 175 So.. 177, 178, it was said: "It is the [employer's] occupation in which the person is employed to perform services rather than his particular duties that determines the application of the Workmen's Compensation Act No. 20 of 1914. The hauling of cane to the derrick was part of the operation of the factory where the finished product was made, and, therefore, the business was hazardous within the meaning of the Workmen's Compensation Act, No. 20 of 1914, as amended."

Our conclusion is that the plaintiff is entitled to compensation for the loss of his finger. The amount allowed by the statute for the loss of an index finger is sixty-five per centum of the wages for thirty weeks. Act No. 20 of 1914, § 8(d), Dart's Stat. § 4398. But it has been decided that, where an injury causing the loss of an index finger produces also by reason thereof a temporary total disability to do work of any reasonable character for a period exceeding thirty weeks, the injured employee is entitled to compensation during the period of disability. It was so decided in McGruder v. Service Drayage Co., 183 La. 75, 162 So. 806; and in Barr v. Davis Bros. Lumber Co., 183 La. 1013, 165 So. 185, the same rule was applied to an injury causing the permanent total loss of the use of a foot, and at the same time producing permanent total disability to do work of any reasonable character. The writer of this opinion dissented from the decision in those cases but has concluded now to yield to the majority opinion. According to which it is possible that the plaintiff in this case is entitled to the sixty-five per cent of his weekly wages for a period exceeding thirty weeks. It appears from the evidence that gangrene had set in when the finger was amputated and the skin was in such a condition that it was necessary to leave the stump open instead of covering it with a skin flap. At the time of the trial, which was nearly four months after the accident happened, the wound was yet open and so sore that the plaintiff was not yet able to do work of any reasonable character; and the surgeons testified that another operation and skin grafting might be necessary to cause the wound to heal. The only means of ascertaining how long the disability lasted, or may last, is to remand the case to the civil district court to hear evidence on the subject. At the time of the accident the plaintiff was earning $1.50 per day but was entitled to free house rent, household fuel, and perhaps other perquisites, which might be entitled to consideration in

determining his weekly wages. This is a matter on which we do not express an opinion, because the matter was not considered by either of the two other courts. The plaintiff is claiming $6.50 per week during the period of disability, not to exceed 400 weeks, and certain medical expenses. We shall remand the case for the purpose only of determining the amount and the period of compensation which the plaintiff is entitled to, and the medical expenses, if any were incurred by the plaintiff.

■ It may seem that the only question on which the plaintiff's suit depended was a question of fact, and hence that the writ of review should not have been granted. According to the provisions of Section 2 of Act No. 191 of 1898, p. 437, a writ of review should not be granted in any case where the correctness of the judgment of the court of appeal depends upon whether the court has decided correctly a question of fact; but, after a writ of review has been granted, we are obliged to decide the questions of fact as well as the questions of law that are tendered for decision; and to that end it is declared in the Constitution, Article 7, Section 11, that we shall have "the same power and authority in the case" as if it had come here directly by appeal. Pipes v. Gallman, 174 La. 257, 140 So. 40. What prompted the granting of a writ of review in this case was, first, the declaration in the opinion of the court of appeal that an occurrence such as the plaintiff described as an accident would "be incidental to his occupation and not

accidental", and, second, the declaration: "The best that can be said of the development of the abscess as a result of the chopping of the wood is that it is an occupational disease which is not covered by the compensation statute." [191 So. 328, 329.] In the brief for the defendant the theory of an occupational disease is rejected, and it is said that no such defense was urged.

### Decree.

· The judgment of the court of appeal and of the civil district court is annulled and the case is now ordered remanded to the civil district court with instructions to fix the amount of the compensation and the number of weeks for which it is to be paid, and to render judgment accordingly, all in accordance with the opinion which we have rendered. The costs of this suit are to be paid by the defendant.