This is a suit under the Workmen's Compensation Law (Act No. 20 of 1914, as amended). Plaintiff alleged he was an employee of the We Hope Gas Oil Company and that on or about December 9, 1939, he was working on said Company's drilling job, known as Frost No. 8, located in Union Parish, Louisiana; and that he was earning $36.75 per week as a driller's helper.
Plaintiff alleged that an accident occurred that night and he was injured as follows:
"III. That at about 11:45 o'clock, P.M., on or about the aforesaid date of December 9, 1939, petitioner was helping his fellow workmen move several joints of six-inch casing in place for setting, while employed as hereinabove alleged, when he was forced to catch the full weight of one end of a joint of said casing, the weight of which was 600 pounds or more, and lift it over his head from an awkward, kneeling position in order to avoid being struck and fatally injured by said pipe as it swung against him after becoming overbalanced and rolling backward while being moved; and that the terrific strain under which petitioner was placed in catching and lifting said piece of casing was accompanied by a sudden, excruciating pain and tearing sensation in the lower region of petitioner's front abdominal wall, which was followed by a feeling of weakness and nervousness and slight nausea.
"IV. That after standing about and resting for a period of about 30 minutes following the above described occurrence, petitioner returned to his work and worked throughout the night on said job and continued to work intermittently for his said employers about two-thirds of the time until December 23, 1939, when he and his fellow-workmen were laid off until after the Holiday Season, and did not return to work until January 1, 1940; but that, while he continued to perform his duties to this extent, petitioner suffered almost continuously from severe backaches and nervousness after the said accident and frequently experienced pain in the area of his lower abdominal wall and right inguinal ring, especially when he was placed under a slight strain or when he coughed or sneezed.
"V. Petitioner complained of his above described injury and the pain resulting therefrom to his fellow-workmen after the occurrence of said accident, but did not ask for an examination because of the fact that he hoped he had received only a muscular strain from which he would recover in due time without medical attention."
Petitioner further alleged that on January 1, 1940, while still employed in the manner and capacity above alleged and while performing his duties within the course and scope of his employment, he stepped into a pool of boiling water, severely burning his left foot; that he was immediately carried to a sanitarium for treatment and has been under continuous treatment for said burn since that time. He alleged the hernia with which he was suffering was caused directly by the accident on the night of December 9, 1939, and that either of said injuries would and have rendered him permanently and totally disabled for doing any work or following any gainful occupation.
Plaintiff prayed for compensation at the rate of $20 per week for a period of 400 weeks, beginning January 1, 1940, and all medical expenses not to exceed the sum of $250, for each injury. He made party defendant the We Hope Gas Oil Company's compensation insurer and prayed for judgment, in solido, against both defendants. *Page 530 
Defendants in answer admitted the employment and rate of pay, but denied each and every other allegation of the petition.
The lower court rendered judgment for plaintiff in the sum of $20 per week for a period of 400 weeks, reserving to him the right to sue later for medical expenses, for the reason he was still under the care of physicians and other expense would be incurred.
Defendants have appealed from this judgment and plaintiff has answered the appeal, praying for damages for frivolous appeal.
Since the case was tried below, one of the defendants, the compensation insurer, has been put in receivership by the Nineteenth Judicial District Court and Harry V. Booth, of Caddo Parish, has been appointed receiver. In this court Harry V. Booth appears and prays that he, as receiver, be substituted as party defendant in the place of the United Employers Casualty Company. He attached to his motion an order signed by the Judge of the Nineteenth Judicial District Court of Louisiana ordering him so substituted, together with a copy of the judgment appointing him receiver.
Plaintiff objected to the substitution being made. The objection is without merit and the substitution is allowed.
Tennessee-Arkansas Gravel Company v. Harvey Jones, La.App., 147 So. 739.
In this court defendants admit that the plaintiff did burn his left foot severely on the night of January 1, 1940, as alleged, and that the condition of that foot up to the time of trial below disabled him from performing any kind of work which he had been accustomed to do. However, they contend that the foot will be thoroughly healed and all incapacity on account of it gone within two months' time after the trial below. They strenuously contend that plaintiff did not receive a hernia while in their employ or due to any accident which occurred while he was at work for the We Hope Gas Oil Company. This is the main controverted question in the case.
Plaintiff's version of the accident complained of on the night of December 9, 1939, can be best stated in his own words as follows:
"A. Yes, sir, we were out on the job. There were two crews out there, one pulling drill stem out of the hole, and we were instructed by the Field Manager, Mr. Butler, to roll some six-inch casing upon the rack and to run it into the hole; and after we got the last joint up the Field Manager instructed Mr. Collins, the driller I was working for, to put the last joint over in front so he could run it into the hole first. Myself and James Thomas, a man working with me and the crew, picked the pipe up and threw it over on the other pipe. There wasn't enough space for us to throw it far enough on the pipe to balance it, therefore, it started rolling on the back end, kicking out or up, and the boy that was working with me turned loose and let the whole weight on me and it started rolling back on me, and I had to hold the whole weight of a joint of six-inch pipe, weighing between six and seven hundred pounds, until I could get it far enough over my head to duck under it. I fell across the pipe and the joint rolled over on me. By the terrific strain I was placed in caused me to have a hernia.
"Q. Now, Mr. Boykin, when you say that you were forced to catch the full weight of the whole length of the pipe, you mean the full weight of the one end that you were handling? A. Yes, sir, about two-thirds of the joint.
"Q. What course did the pipe take after it rolled over you? A. It rolled on down the skids to the ground.
"Q. How high was that platform from which it rolled to the ground? A. About 12 feet high.
"Q. Why did you have to catch the pipe and lift it in its course over your head? A. Because it would have rolled over me and probably fatally injured or killed me.
"Q. Did you experience any pain either while you were in that strained position or just after you got up from the pipe that had fallen on you? A. Yes, sir, I experienced a sharp pain in my lower abdomen.
"Q. Did you feel any other sensation that was caused from the injury? A. Yes, sir, I was dizzy for a while and very nervous and jerky.
"Q. Did you have any feeling of nausea at all? A. Yes, sir, I had a slight feeling of nausea.
"Q. You didn't vomit though, did you? A. No, sir. *Page 531 
"Q. What did you do immediately after this accident occurred? A. We picked the joint of pipe up and pulled it through the derrick on the side and rolled it out the `V' on the platform.
"Q. You didn't try to put it back on the pipe rack then? A. No, sir.
"Q. Were you able to do your share of the lifting in that operation in placing the pipe around in this new location? A. I was, but it gave me pain to do so.
"Q. You were still somewhat excited from your narrow escape then? A. Yes, sir. * * * *
"Q. What did you do immediately after the piece of pipe was removed? A. I went out to the boiler.
"Q. As a matter of fact, were you firing the boiler? A. Yes, sir.
"Q. And these other duties were incidental to your duties as fireman, were they not? A. Yes, sir.
"Q. What did you do after you went to the boiler? A. I stood around and watched the boiler about 30 minutes.
"Q. Was there anyone else at the boiler with you during that time? A. No, sir.
"Q. Did you perform any other manual duties that night? A. Yes, sir.
"Q. You worked throughout the night and through the regular shift? A. I went on back upon the rig and resumed working, helped them set casing.
"Q. Well now, did your pain recur or disappear after that? A. No, it didn't disappear.
"Q. Well, did you develop any other ache or pain? A. Developed a backache.
"Q. Was that during the night? That same night? A. Yes, sir.
"Q. Did you feel any pain or ache when you were placed in a strain while you were doing the work that night? A. Yes, sir, I did."
Plaintiff further testified that a dull pain continued from that time until he scalded his foot on the night of January 1, 1940, and that it was when he fell over after stepping in the hot water that he fully realized he had a hernia. He claims to have told one of his fellow workmen several days after the alleged accident that he was afraid he had a hernia. Plaintiff did not mention it to anyone else. After the pipe had rolled back, causing some commotion, the driller in charge inquired if anyone had been hurt and was informed that no one had been injured. Plaintiff was present when the question was asked but gave no reply.
There were a number of witnesses, all fellow workmen, who saw the antics of the pipe, but none of them saw plaintiff place his hands on it after he and his co-worker had attempted to throw it. Most of them saw him in a stooped and crouched position, as the pipe passed over his head. It did not strike him. As soon as the commotion caused by the pipe getting away from them was over, plaintiff resumed his regular duties.
Plaintiff's duties required him to fire the boiler and when not needed there, to help on the derrick floor. He immediately went to see about the boiler and remained there possibly half an hour, then returned to the derrick floor and continued his regular duties for the remainder of the night without making any complaint to anyone. He worked every night the rig was running from that time until the 23d or 24th of December, when the night crew was laid off for the Christmas holidays. When work was resumed on January 1, 1940, plaintiff went back on the same job and continued his work without complaint until he was scalded. When carried to the sanitarium that night, he made no complaint to the doctor about the hernia. It was the next day, January 2, 1940, when plaintiff called his physician's attention to the fact that he had a hernia. The doctor then examined him and found an inguinal hernia. Two days later plaintiff went to the office of the We Hope Gas Oil Company for the purpose of making a report of his injuries in order to secure compensation. Miss May, a stenographer in the office, typed the report for him and the only injury he reported was the burned foot. Plaintiff made no mention of a hernia. He stated that for some days after the accident on December 9 he thought possibly he had a muscle strain and for that reason made no complaint, but on January 2, 1940, he knew he had a hernia and on January 4, in making his claim report to his employer, he made no mention of it and did not claim it was caused by any accident or while in the employ of the We Hope Gas Oil Company.
In 1936 plaintiff had a left inguinal hernia and was operated on. He therefore certainly knew the symptoms of hernia *Page 532 
and if he received his present hernia on the night of December 9, due to strain which would cause a tearing of the muscles in that part of the body, he certainly should have known what it was and reported it. It is not reasonable to think plaintiff would have continued his heavy work and not let anyone know he had been hurt.
Although the Compensation Law should be liberally construed in favor of plaintiff, the law requires him to prove his case with some degree of certainty. Plaintiff has failed to do that in this case and there is, in our minds, a most serious doubt as to his having received the hernia complained of on the night of December 9, 1940, as he claims.
We therefore conclude that the lower court was in error in finding that the hernia plaintiff has was caused by any accident or while working for the defendant Gas Oil Company. If plaintiff had thought so, it is unexplained why he did not report it on January 4, 1940, when reporting the injury to his foot.
Plaintiff was burned on the night of January 1, 1940. This case was tried on April 11, 1940, and it is admitted that plaintiff's foot was at that time still sufficiently injured to prevent his performing any reasonable kind of labor. Some of the doctors thought that in two months' time it would be thoroughly healed and all disability gone. The doctor who treated him and who was treating him at the time of trial, testified that he thought at first the foot would heal in a few weeks and that on several occasions it had almost healed, then over night would flare up again. He could not account for this but was sure it was a very stubborn wound. The doctor was unwilling to hazard a guess as to when it would be well again. The sores caused by the burn have not responded to treatment and may never. If they do, defendants have their remedy at law. We would not feel safe in fixing the time within which his foot will heal. It is certain that plaintiff is incapacitated because of the foot injury and we are of the opinion he is entitled to compensation at the rate of $20 per week for a period of disability not to exceed 400 weeks, payments to begin of date January 1, 1940, and it is so decreed.
The reservation made for plaintiff to sue for medical expenses at a later date is correct; and his demands for compensation for hernia are rejected.
Plaintiff's motion and prayer for damages for frivolous appeal, under our finding, are rejected. Cost of appeal to be paid by appellee and all other costs to be paid by appellant.