124 So.2d 234 (1960)
Joe PARISH, Plaintiff-Appellee,
v.
FIDELITY & CASUALTY COMPANY OF NEW YORK, Defendant-Appellant.
No. 9293.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1960.
Rehearing Denied December 1, 1960.
Certiorari Denied January 9, 1961.
*235 Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for appellant.
Frederick J. Stewart, Shreveport, for appellee.
AYRES, Judge.
This is an action for workmen's compensation, hospital and medical expenses incurred as the result of accidental injuries sustained April 19, 1959, and for statutory penalties and attorney's fees.
Defendant has appealed from a judgment making an award of compensation as for total and permanent disability, less compensation previously paid over a period of nine weeks, as well as for an allowance for hospital and medical expenses. Plaintiff, through answer to the appeal, prays that his rights to claim future medical expenses be reserved, that his attorney's fees be fixed in accordance with the statute, and that penalties and attorney's fees be assessed against the defendant for its arbitrary refusal and its failure, without probable cause, to pay compensation.
No issue is presented as to the occurrence of an accident or that plaintiff sustained accidental injuries as a result thereof. The primary issue is entirely factual and relates to the degree, nature, and extent of plaintiff's injuries, and the resulting disability. Nevertheless, a statement of the facts is deemed advisable for an understanding of these issues and the basis for their determination.
Plaintiff was an oil field worker, described generally as a "roughneck." On the occasion of the aforesaid accident plaintiff was employed by defendant's assured in connection with the drilling of an oil well by means of a portable drilling rig. On that occasion a storm arose, whereupon plaintiff retired to the "tool" house attached to the derrick. From the force of the winds, the derrick was toppled and blown to the ground, the tool house overturned, and plaintiff pinned beneath a tool chest and assorted heavy tools. After having been extricated, by three of his fellow employees, from the heavy weights which rested upon his lower extremities, from his hips down, plaintiff was able to walk. However, his body was battered *236 as evidenced by numerous bruises and contusions.
At the time of the accident, plaintiff was 61 years of age. He had suffered numerous prior injuries, including a skull fracture in 1938, an injury to his shoulder about the same time, and, later, an injury to his right knee. In 1946, he suffered a stroke involving the entire right side of his body. Nevertheless, plaintiff had recovered from the effects of these injuries to the extent that he again resumed his occupation as an oil field worker and thereafter performed his duties efficiently and satisfactorily without pain or discomfort. X-rays taken shortly after the presently-involved accident disclosed the existence of degenerative changes and arthritis, particularly in his knees and vertebrae.
Plaintiff's position is that his disability results directly from the accidental injuries sustained, or from an aggravation of a pre-existing physical condition superinduced by the accident. Defendant contends that plaintiff had recovered from the injuries sustained within two months after the accident and that his present disability results solely from his aforesaid pre-existing condition. Further, for recovery of additional compensation, defendant contends that plaintiff has not sustained his burden of proof by a preponderance of legal and competent evidence in that the facts sought to be established are not evidenced by objective symptoms but only by subjective complaints. For determination of the merits of these positions, reference must be made to the medical testimony.
The day following the accident, plaintiff reported to a clinic in Shreveport where he was examined and treated for approximately a month by Dr. D. A. Hiller, Jr. X-rays of the right knee and upper femur, taken at the time, revealed no recent fractures. An old fracture of the proximal tibia, healed with a marked traumatic arthritis, was, however, disclosed. Additional X-rays of April 24, 1959, revealed no evidence of fractures or dislocation of the right hip or femur, but the prevalence of arthritis was noted in X-rays of both knees, as was first noted in the right knee. The first examination revealed, also, a very large contusion on the right hip and abrasions on both legs.
The injuries sustained by plaintiff were not, in the opinion of Dr. Hiller, severe. Plaintiff was therefore discharged May 18, 1959, as able to return to work. Plaintiff contended, however, he could hardly walk and was, therefore, unable to work.
Due to plaintiff's persistent complaints of continuing disability, he was next referred by defendant to Dr. J. M. Gosslee, an orthopedist of Shreveport. Examinations by Dr. Gosslee were made under dates of June 2 and November 10, 1959. On the occasion of the first of these examinations, Dr. Gosslee testified plaintiff reported some improvement following physiotherapy as directed by Dr. Hiller, but complained of difficulty with his knee, pain in his back, and tenderness in the right lumbosacral area. On examination, plaintiff was found to have a "peculiar" gait, with a limp affecting his right leg. No sensory abnormalties were noted in plaintiff's lower extremities except in the healing of the abrasions in proximity to the knees. The left knee lacked five degrees in complete extension and flexed only to fifty degrees; the right knee lacked ten to fifteen degrees of complete extension but flexed to eighty-five degrees. Severe grating in each knee accompanied these movements. Tenderness was prevalent over the anterolateral and anteromedial aspect of the right knee. Extensive hypertrophic changes were noted in the lumbar vertebrae with a narrowing of the interspace between lumbar vertebrae 4 and 5. Considerable narrowing of the lumbosacral joint with a complete obliteration posteriorly was also noted, as were moderate hypertrophic changes above the articular margins of the bones of the left knee. There was a possible slight narrowing of the joint space. Similar changes were noted in the right knee, particularly a pronounced irregularity *237 of the articular margin of the lateral condyles or joints of the tibia and of the femur, with an almost complete obliteration of the joint space between these joints. Disclosed, also, were fracture lines of an old healed fracture of the upper right tibia.
The aforesaid pathological changes in the lumbar spine, pelvis, and knees, as well as a malalignment of the bones of the right knee, existed, in the doctor's opinion, prior to and at the time of the injuries sustained April 19, 1959. At the time, the doctor was of the opinion that plaintiff would be able to return to the performance of his former duties within two months from the date of the accident. Finally, however, he concluded plaintiff could not carry out all the duties required of a roughneck, not because of any disability brought on by the accident but because of a pre-existing condition. In this connection, the doctor stated:
"* * * whether that injury caused him to have some increase in disability, I cannot say. I think it is possible that it could have, but by virtue of my examination and on the basis of the history, I believe that injury was not sufficient to completely change his working habits to point where he was able prior to that injury and disabled after that injury."
Plaintiff, however, during August, endeavored to resume work on a night shift. He testified, because of pain in his leg and back, he was unable to complete the shift on the second night. A report of this effort was made to Dr. Gosslee on the occasion of his second examination November 10, 1959. Plaintiff's primary complaint then was a pain in his right knee which became worse on long standing or walking and while lifting heavy objects. This latter examination revealed no important changes in results from those of the first examination; the condition of plaintiff's back and knees was essentially the same as existed two months after the accident, and, as the doctor contended, existed prior thereto.
There was no change in opinion after the doctor's last examination, that plaintiff was unable to perform all the duties required of a roughneck. This disability, he attributed, as heretofore pointed out, to the severe hypertrophic changes heretofore noted, especially to the right knee, but it was contended that with a reasonable buildup, by the performance of lighter work, plaintiff would eventually be able to return to the duties he was performing before the accident. It may be observed that the doctor expressed the possibility that the trauma received by plaintiff in the accident may have contributed to his pre-existing conditions in producing his disability.
Dr. Willis J. Taylor, at the instance of the defendant, examined plaintiff December 29, 1959. According to his testimony plaintiff's disabilities antedated the accident and any exaggeration produced by the accident was only temporary in character. The narrowing of the interspace between the 4th and 5th lumbar vertebrae were attributed to arthritis, with which plaintiff was afflicted before the accident. An estimate was made of disability of 25 percent to plaintiff's right knee and 18 percent to his leg.
There was no question in the doctor's mind, at the time of trial, of plaintiff's then total and permanent disability. His opinion was that plaintiff was so disabled prior to the accident, although he performed heavy manual labor efficiently and satisfactorily and without pain, discomfort or complaints. However, it was conceded that the accident would be calculated to aggravate plaintiff's condition and contribute to his disability in the discharge of his duties.
Similar findings were made by Dr. S. W. Boyce in an examination of plaintiff in November, 1959, and a similar conclusion reached by him that plaintiff was totally and permanently disabled from performing *238 the work of his former occupation. His opinion was that plaintiff's pre-existing condition, particularly in his knee, was aggravated by the accident so as to produce, in plaintiff, total and permanent disability to perform oil field work.
Dr. Ray E. King, an orthopedist, under an examination of September 1, 1959, found limitations in the extension and flexion of the lower limbs, with a grating sound in the movement of the right knee, in addition to the arthritic and degenerative changes in the area of the lumbosacral spine. There was no question in the doctor's mind that plaintiff was totally disabled to perform the duties of a roughneck. The effect of the traumatic injuries sustained by plaintiff in the accident of April 19, 1959, was, in his opinion, the hastening and accelerating of plaintiff's disability. Similar findings were made and similar conclusions reached in an examination of January 28, 1960.
Testifying also, on behalf of the plaintiff, was Dr. Edwin C. Simonton, an orthopedist who had examined plaintiff upon referral by the Vocational Rehabilitation Department of the Department of Education of the State. His findings were essentially those of the other orthopedists. Plaintiff, in his opinion, was totally incapacitated, which incapacity was due to previously-existing conditions aggravated and worsened by the injuries sustained in the accident of April 19, 1959. Dr. Simonton, as did a number of the other examining physicians, found objective symptoms for pain of which plaintiff complained, and was of the opinion this pain was real and not feigned.
The record contains the testimony of seven of plaintiff's former fellow employees or supervisors. Their testimony is that plaintiff performed his duties over a period of years, which they had occasion to observe, without aid or assistance, without complaints of pain or inconvenience, and that he performed his work diligently, efficiently, and satisfactorily.
From the aforesaid resume of both expert and lay testimony, the conclusion is inescapable that plaintiff, prior to April 19, 1959, was afflicted with arthritis in the area of the lumbosacral spine and in his right knee which, at the time, however, was not disabling but which, due to the trauma and injuries sustained in the accident, was aggravated to such an extent that total and permanent disability in the performance of manual labor, such as required of oil field workers, resulted.
The principle is well established in the jurisprudence of this State that the employer takes the employee as he finds him. The worker who is abnormally susceptible to disability from an accident is entitled to the full protection of the compensation statute even though the same accident would have caused little or no harm to a healthy worker. Nor is it important that the diseased or weakened condition might alone have eventually produced disability. Malone's "Louisiana Workmen's Compensation," page 278, § 232. An employee's disability is fully compensable when precipitated by an industrial accident, even though caused, also, by a contributing pre-existing dormant physical condition or predisposition. Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625; Behan v. John B. Honor Co., 143 La. 348, 78 So. 589, L.R.A.1918F, 862; Brewster v. City of Shreveport, La.App.1959, 115 So.2d 229; Ceasar v. Calcasieu Paper Company, La. App.1958, 102 So.2d 314; Guillory v. Reimers-Schneider Company, La.App.1957, 94 So.2d 134; Michel v. Maryland Casualty Company, La.App.1955, 81 So.2d 36.
This case comes within the rule that an employee disabled by accident is not to be denied compensation merely because he was already afflicted with a disease which, in its ordinary progress, might have caused the disability eventually even without any accident and where the accident merely superinduced the disability. Robichaux v. Realty Operators, Inc., 195 La. 70, 196 So. 23; Behan v. John B. Honor *239 Co., supra; Livaccari v. Fidelity & Casualty Co. of New York, La.App.1960, 118 So.2d 275.
This case comes, also, within the rule established and reiterated in Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1, that the law does not require or contemplate that a laborer, in order to earn a living, must work in pain or that he do so when it will materially increase not only the hazard to his health and safety but to that of his fellow employees.
From our review and consideration of both lay and medical testimony, in the light of the aforesaid applicable legal principles, the conclusion is inescapable that plaintiff is totally and permanently incapacitated from the performance of the heavy manual labor of his former occupation as an oil field worker and that such disability resulted from accidental injuries accelerating and aggravating a prior-existing physical condition which, of itself, was not disabling at the time of the accident but which, precipitated by the accident, has produced the resulting disability. Plaintiff was, therefore, properly awarded compensation as for total and permanent disability.
Plaintiff, however, seeks recovery of penalties and attorney's fees, under the provisions of LSA-R.S. 22:658. Dr. Hiller, the original treating physician, discharged plaintiff May 18, 1959, as fully able and capable of returning to his former employment and to discharge the duties thereof. Dr. Gosslee expressed the opinion, following his examination of June 2, 1959, that plaintiff should perform the duties of his former employment within two months after the accident. Reliance, in good faith, upon the reports of competent medical authorities does not constitute arbitrary or capricious action. The record evidences a bona fide dispute between plaintiff and his employer's surety as to whether plaintiff sustained, by the accident, any disability and whether plaintiff was due any compensation. In such cases the employer and his insurer are entitled to a judicial determination of an employee's claim without incurring penalties.
Plaintiff sought recovery, also, of an additional sum not to exceed $2,500 for medical expense and incidental expenses which may have been or which may be incurred by petitioner, less approximately $123.40 paid, and prayed for judgment accordingly.
No provision is made, by the Workmen's Compensation Act, LSA-R.S. 23:1021 et seq., for the allowance of future medical expenses. However, the plaintiff's right to assert any claim in the future for whatever amount, within statutory limits, he may incur for his treatment in connection with his injuries should be reserved. Cain v. Employers Casualty Company, La. App.1957, 96 So.2d 527; Fourchea v. Maloney Trucking and Storage, La.App.1956, 88 So.2d 82; Wilson v. New Amsterdam Casualty Company, La.App.1956, 86 So.2d 556; Rosenquist v. New Amsterdam Casualty Company, La.App.1955, 78 So.2d 225; Boykin v. We Hope Gas & Oil Co., La. App.1941, 2 So.2d 528.
The judgment appealed should be amended, however, to correct the obvious clerical error in fixing plaintiff's attorney's fee so as to comply with the provisions of the statute.
Accordingly, it is ordered, adjudged and decreed that plaintiff's attorney's fee be, and it is hereby, fixed, in accordance with LSA-R.S. 23:1141, at 20 percent of the first $5,000 of the award and 10 percent of the award in excess thereof, and that plaintiff's right to make claim for whatever medical expenses he may incur in the future in connection with the treatment of his injuries, within the statutory limits and subject to $123.40 paid, be reserved; and, as thus amended, the judgment appealed is affirmed at defendant-appellant's cost.
Amended and affirmed.