YARRUT, Judge.
Plaintiff-appellant appeals from a judgment of the District Court denying him Workmen’s Compensation at $35 per week for 400 weeks, and for medical expenses, on the ground he did not prove to the satisfaction of the Court that his injuries were “either caused or aggravated by the accident”.
Defendants-appellees admitted plaintiff’s employment and injuries during the course of employment, but denied his injuries were total and permanent.
The- sole issue in the case is whether or not the ulcer, heart condition, and mental disturbance were aggravated as the result of the accident. There is no question that these symptoms manifested themselves after the trauma.
On January 14, 1959, plaintiff, a 57-year-old freight handler, while on and unloading a freight car, accidentally fell eight feet to the ground, injuring his head and left shoulder. He was dazed for ten minutes. When revived he was sent by defendant (employer) to the office of Dr. J. *451 Kelly Stone, a general surgeon, for treatment. Dr. Stone was absent so plaintiff was sent to Flint-Goodridge Hospital for X-rays. He returned to Dr. Stone’s office the next day, and was treated by him on January IS, 16, 19, 21, 23, 26 and 28, on which latter date he was discharged, with instructions to return to work the following day.
As plaintiff was losing weight, had trouble eating, and was too weak to work, he was admitted to Flint-Goodridge Hospital March 10th, where he was treated for having a gastric ulcer and discharged on April 4th, with the notation “Patient is restless and depressed”.
Four days later (April 8th) plaintiff was admitted to Charity Hospital psychiatric ward in New Orleans because of his unusual behavior, and discharged five weeks later, on May 14th, with a diagnosis of schizophrenic reaction and chronic paranoid. He was again admitted on July 29th and discharged on August 19th, with the same diagnosis. Since his last discharge he has been an out-patient of that Hospital.
After the accident plaintiff’s condition was diagnosed as hypertension, an enlarged and arteriosclerotic heart. Back in 1950, plaintiff was admitted to the same Charity Hospital for mental treatment, diagnosed as paranoid schizophrenia. He was discharged from the Hospital in 1951, and for eight years (1951 to 1959), plaintiff enjoyed good health, and never returned to the Hospital for treatment. From 1951 until the accident here plaintiff’s illness was dormant. He lived a normal life, worked as a common laborer, primarily as a freight handler, loading and unloading freight cars and trucks; ate well and required no medical treatment whatever.
However, since the accident plaintiff’s pre-existing illness (chronic paranoid schizophrenia) was reactivated or aggravated from its dormant state, and caused him to deteriorate progressively, mentally and physically. He became weak, depressed and apathetic, his weight dropping from 210 pounds to 160, rendering him totally unfit for manual labor. This emotional upset, in turn, aggravated his pre-existing heart condition.
Three doctors testified for plaintiff, namely, Dr. Wm. R. Sorum, Dr. Shea Halle, and Dr. Henry E. Braden, III; and two, Dr. J. Kelly Stone and Dr. Robert G. Head, for defendant. Dr. Sorum specializes in psychiatry; Dr. Halle is not a psychiatrist, but specializes in relationship between emotional and physical diseases, but had psychiatry training in the Army; Dr. Head practices psychiatry. All have extended records of training with respect to their specializations; Dr. Stone and Dr. Braden, both general practitioners and surgeons.
That plaintiff had a pre-existing chronic paranoid schizophrenia during the years 1950 and 1951 is not disputed. The psychiatrists all agree there is no known cure for such illness; that the symptoms subside and become dormant, but may recur again and again. When a seizure recurs, the victim is not able to do any type of manual labor. They also agreed that plaintiff’s heart condition could seriously affect him if he attempted further manual labor.
Though the doctors all agreed to plaintiff’s present illness and disability, they did not fully agree to what actually reactivated it. Drs. Sorum and Halle were reasonably certain that the accident on January 14, 1959, was the actual reactivating and aggravating cause. Dr. Halle furthermore felt that the schizophrenic breakdown also aggravated the pre-existing heart condition. Dr. Head’s opinion was that the accident could have been the cause, but could not pinpoint it.
The sole issues are whether plaintiff proved a causal connection between the ac *452 cident suffered by him on January 14, 1959, and the subsequent reactivation and aggravation of his prior dormant schizophrenic paranoid illness; and if so, did the schizophrenic flare-up, in turn, cause such deterioration of plaintiff’s heart.
In Edwards v. Shreveport Creosoting Co., 207 La. 699, 21 So.2d 878, 879, plaintiff’s burden was clearly defined:
“The law is clear that the plaintiff in a compensation case bears the burden of proving his case with reasonable certainty, by a preponderance of the evidence. He is not obliged to furnish conclusive proof. * * * ‘By a preponderance of evidence is meant simply evidence which is of greater weight, or more convincing, than that which is offered in opposition ■ to it.’ ” Cook v. M. J. Walsh Boiler Scaling Co., La. App., 40 So.2d 655; Peppers v. Toye Bros. Yellow Cab Co., La.App., 198 So. 177.
The Courts have adopted the view thAt, where a person who enjoys good health suffers an accident and within a short time thereafter a dormant pre-existing illness or old injury, disconnected with the accident, flares up and becomes active, it will be presumed that the flare-up was not a coincidence, and that it was set in motion as a direct result of the accident. And it is sufficient for the plaintiff, in order to cast the burden of proof upon the defendant, to show by medical testimony that there is a reasonable possibility that the result claimed for did happen. Mire v. St. Paul Mercury Indemnity Co., La.App., 103 So.2d 553; Peppers v. Toye Bros. Yellow Cab Co., La.App., 198 So. 177.
The medical testimony may be epitomized as follows: Dr. Sorum, one of plaintiff’s medical experts, a practicing psychiatrist, in answer to a hypothetical question, testified;
“It seems reasonable in the absence of any other severe trauma around that period, then the accident would seem probably to be the cause, not of his illness but of the reactivation and decom-pensation of this illness. The illness pre-existed the accident.”
Dr. Halle, plaintiff’s other medical expert, a specialist in internal medicine with special experience in the field of the interrelationship between emotional and physical diseases, testified:
“Q. Do you feel that you can say, in your opinion with reasonable certainty, that this accident reactivated this prior dormant and latent sickness of paranoid schizophrenia and caused his downhill trend and present day disability? A. I feel that probably unless someone can show me another chain of events that I know nothing about, that that is it.”
Dr. Head testified:
“Q Doctor, you have said, I believe, that you don’t know whether the accident could cause the schizophrenic reaction or not, although you admit it is possible? A. Yes.”
Buxton v. W. Horace Williams Co., 203 La. 261, 13 So.2d 855, holds that an employee, who had previously suffered from a mental disorder and was in good health and satisfactorily performing manual labor when accidentally injured, and thereafter immediately began to lose weight and progressively grew worse, was entitled to compensation as the accidental injury aggravated a pre-existing mental condition and was the “proximate cause”, though not the sole cause, of the subsequent disability. See also Dupre v. Wyble, La.App., 85 So. 2d 119.
*453 An employer takes the employee as' he finds him. A worker who is susceptible to disability is entitled to the same protection of the compensation statute as is a normally healthy worker. Nor is it important that the diseased or weakened condition might alone have eventually produced disability. Parish v. Fidelity & Casualty Co. of New York, La.App., 124 So.2d 234; Malone’s “Louisiana Workmen’s Compensation”, § 232, p. 278.
Plaintiff proved medical expenses in the sum of $1,052.50 by the Charity Hospital statement in the sum of $1,011.50 and $41 due the Browne-McHardy Clinic.
Accordingly, we must conclude that plaintiff has proved his case by a preponderance of the credible evidence, and is entitled to a judgment against defendants-appellees for compensation at the rate of $35 per-week, commencing on January 14, 1959, and continuing during disability, not to exceed 400 weeks in all, less credit for one week’s compensation paid on January 28, 1959, together with legal interest on each past due installment from the date of delinquency until paid; and for medical expenses aggregating $1,052.50, with legal interest from judicial demand until paid; reserving to plaintiff his right to judicially claim any future medical expenses incurred by him on account of his injuries, within the statutory limits; that the expert witness fees of Drs. Halle, Sorum and Braden, be fixed at $100 each; that plaintiff’s attorneys’ fee be fixed in accordance with LSA-R.S. 23:1141 at 20% of the first $5000 and 10% of the award in excess thereof; that all costs, including the fees of the experts, be paid by the defendants-appellees.
The judgment of the lower court is reversed and judgment rendered in favor of plaintiff and against defendants as prayed; as above set forth.
Reversed and rendered.