TATE, Judge.
The plaintiff’s daughter died as a result of a brain hemorrhage. As beneficiary under a “school accident insurance policy” issued by the defendant insurer, the plaintiff brings suit to recover for his daughter’s death. Under the terms of the policy, indemnity was provided for death of the insured child if caused by accident while she was attending school.
The trial court held that the child’s death was covered by the insuring provision of the policy. The defendant appeals from judgment awarding the face amount of the policy to the plaintiff.
The defendant contends that the only medical evidence in the record proves conclusively that the child’s death did not result from any trauma at school, so as to be within the coverage of the school accident policy.
So far as the evidence shows, the plaintiff’s little girl did not sustain any trauma on the day she died. On that day, she came *155 home from school at about four in the afternoon, “dizzy-headed like”, but she went outside to play with her baby brother. At about a quarter of six a very severe pain struck her in the head, and she came to her mother, screaming and crying. She soon became unconscious. Her parents brought her to the hospital. The child died at about 11:00 P.M. that night while en route by ambulance to Shreveport.
The medical evidence reflects that the •cause of her death was a hemorrhage beneath the skull resulting from some trauma to her head. The evidence further reflects that, six days before .her death, the little •girl had fallen during school hours and had struck her head forcefully against the concrete wall of the school building.
The plaintiff urges, with considerable effect, that this sufficiently proves that the •child’s death resulted from an accident on the school ground, since the evidence shows that the death resulted from a head trauma .and since the only evidence of a trauma is that of the head injury at school six days •earlier.
Our learned trial brother sustained the plaintiff’s contention, also relying upon jurisprudence which holds: A medical condition producing disability or death is presumed to have resulted from an accident, if before the accident the injured person was in good health or affected only with latent symptoms, but shortly after the accident the •disabling or death-causing condition manifested itself; provided that the medical evidence shows that there is a reasonable possibility of a causal connection between the accident and the disability or death. Porter v. Dennis Sheen Transfer, Inc., La.App. 4 Cir., 130 So.2d 450; Blanchard v. Travelers Ins. Co., La.App. 1 Cir., 121 So.2d 515; Mire v. St. Paul Mercury Indemnity Co., La.App. 1 Cir., 103 So.2d 553; Taylor v. Mansfield Hardwood Lbr. Co., La.App. 2 Cir., 65 So.2d 360; Peppers v. Toye Bros. Yellow Cab Co., La.App.Orl., 198 So. 177.
In order to recover under the terms of the policy, the plaintiff must prove that the child’s death resulted from an accident at school. It is conceded that, in order to recover, a causal connection must be proved between the accident at school and the child’s death six days later, since this is the only school accident in evidence.
Although it is contended that, following the accident and until her death six days later, the previously healthy child became listless, suffered from headaches, and evidenced personality changes, we do not find that the record supports this contention. The child’s school teacher stated that, after the child had ceased crying immediately after the accident, she attended the school during the few days before her death with no further complaints. This witness did state that on the very day of her death, six days after the accident, the child was a little sluggish in her work and a little slower than usual. This teacher also testified that the child did not have good coordination and was apt to fall if she tried to run and play like the other children. Tr. 32.
The only other witness as to the child’s condition during this interval was her mother, who stated that on and off following the fall the child complained of her head when she would stoop.
The only medical evidence in the record is the testimony of the doctor who attended the child shortly before her death and who performed an autopsy. This doctor was of the definite opinion that the brain hemorrhage causing death was the result of a recent trauma, such as a fall or a blow on the head. The doctor believed that such a recent trauma must have been the cause of the death because of the suddenness of onset, with a sudden increase in pressure, and the massiveness of the hemorrhage found after the death.
However, this doctor testified definitely that, in his opinion, “three hours to four hours at the most” elapsed between the trauma and the child’s death. Thus, the only medical evidence in the record negatives any causal relationship between the *156 child’s death and her accident six days earlier at school.
On appeal, able counsel for plaintiff nevertheless points out that the doctor’s testimony was taken by written interrogatories, without opportunity at the time for eliciting further details by further interrogatories. Counsel also points out that the death certificate filled out by this same doctor, which is in evidence, stated that six to eight hours had elapsed between the onset of the hemorrhage and the subsequent death. Counsel further cites a medical text to the effect that there may be an interval of as long as several weeks between the trauma and the onset of a hemorrhage resulting therefrom.
Counsel strongly argues, therefore, that the doctor’s testimony taken more than a year after the child had died does not necessarily negative the school accident as the cause of the onset of the hemorrhage six days later which caused the child’s death, if the testimony is considered in conjunction with the death certificate which he had completed immediately after the child’s death.
As forceful as is counsel’s argument, we nevertheless have concluded that the plaintiff has not proved any causal connection between the child’s fall at school and her death six days later.
The attending physician testified that the death at 11:00 P.M. resulted from a trauma three to four hours earlier. As counsel contends, the doctor must have been mistaken in this estimate, because the little girl was virtually in her mother’s arms during the last five or six hours of her life. Even so, however, the more reasonable construction of the doctor’s testimony, even if modified in the light of the death certificate completed by him immediately after the child’s death, is that the trauma causing the onset of the massive hemorrhage occurred at least on the day of the death, even if six to eight hours (instead of three to four hours) prior thereto.
Further, the doctor’s testimony was taken by written interrogatories more than four months before the trial. This, the only medical testimony in the record, clearly and unambiguously states that the trauma or accident producing the hemorrhage which caused the child’s death had occurred only several hours earlier; and not, as the plaintiff has consistently contended, by a trauma six days before the death. Thus, although the medical text cited in brief may indeed indicate that there may be an interval of several days between a trauma and the onset of a cerebral hemorrhage, the only medical evidence in this record by the only doctor who examined the effects of this particular hemorrhage shows that it resulted from a trauma which occurred only several hours earlier.
As the defendant-appellant suggests, if the plaintiff felt that the testifying physician’s testimony was inadvertent and was not intended to exclude the school accident six days earlier as the cause of the death, it was open to the plaintiff to file further interrogatories or to take further medical testimony to show, as the necessary foundation for his recovery, that there was at least a reasonable medical possibility that the school accident was the cause of the death six days later.
We therefore find that our learned trial brother fell into error in finding that the plaintiff had made out his case by simply proving the fall and head blow at school and that the child’s death resulted from a fall or head blow. The plaintiff was under a burden also to prove at least a reasonable medical possibility that the proven school accident caused the child’s death; having failed to meet this burden, his suit must fall, since the defendant’s policy did not provide coverage unless the death resulted from a school accident.
For the foregoing reasons, the judgment of the district court is reversed, and the plaintiff’s suit is dismissed at his cost.
Reversed.
On Application for Rehearing.
En Banc. Rehearing denied.