HALL, Judge.
Plaintiff brought suit in workmen’s compensation against his employer and its compensation insurer alleging total and permanent disability resulting from injuries received in an accident on September 17, 1958. He prosecutes this appeal from a judgment rejecting his demands and dismissing his suit.
The record shows that plaintiff was injured on September 17, 1958, during the course and scope of his employment as a welder when he was struck on the leg by a pipe, knocked down, and momentarily rendered unconscious. His apparent injuries consisted of a fracture of several toes of his left foot for which he was treated by Dr. Francis T. Gidman, a general surgeon. These injuries healed without incident, and plaintiff has been paid full compensation benefits for the disability resulting therefrom. However plaintiff is now suffering from complete loss of sight in his left eye as the result of an aneurism of his left posterior communicating artery which developed shortly after the accident. The loss of sight is permanent and interferes with his coordination and there is no doubt that plaintiff is totally and permanently disabled from performing the work of a welder. The sole question presented is whether the aneurism resulted from the accident.
Several days after the accident plaintiff, who was then suffering from an upper respiratory infection, began having headaches. He testified that he first complained to Dr. Gidman who was treating his toes and that Dr. Gidman prescribed cough medicine and a sedative. The headaches and cough got worse and on September 25, 1958, Dr. Edward J. Puneky, an internist, was called to his home to treat him. Fie was then also complaining of an impairment of vision. Dr. Puneky had plaintiff admitted to Charity Hospital on October 12, 1958, where he was examined and treated under the direction of Dr. Richard W. Levy, a neuro-surgeon. It was there discovered that his eye condition was caused by an aneurism of the left posterior communicating artery which was touching or pushing upon the nerve controlling movement of the left eye. He was operated on under Dr. Levy’s supervision and the left carotid artery was ligated in order to reduce the pressure in the aneurism and take the pressure off the nerve. However plaintiff’s sight had been permanently damaged.
Plaintiff recognizes the rule that a plaintiff in a workmen’s compensation case must prove his case with the same legal certainty as is required in any other civil case. However he contends that this case comes within the doctrine which is stated in Peppers v. Toye Bros. Yellow Cab Co., La.App., 198 So. 177, as follows:
“ * * * the courts have adopted the view that, where a person who *845 •enjoys good health suffers an accident and within a short time thereafter a dormant pre-existing illness or old injury disconnected with the accident flares up or becomes active, it will be presumed that the flare up was not a coincidence and that it was set in motion as a direct result of the accident. And it is sufficient for the plaintiff, in order to cast the burden of proof upon the defendant, to show by medical testimony that there is a reasonable possibility that the result claimed for did happen.” (See also Porter v. Denis Sheen Transfer Inc., La.App., 130 So.2d 450)
The parties agree that the decision in this case rests upon the interpretation of the medical testimony. In his written ■“Reasons for Judgment” the Trial Judge •said:
“The Court is of the opinion that the testimony of all of the doctors in the case is to the effect that the aneurism occurred not as a result of the accident, but as a result of the •coughing occasioned by the upper respiratory infection for which Dr. Pun-•eky treated him. The Court is aware of the jurisprudence to the effect that where some traumatic episode occurs, and there is some probable connection between the accident and the disability, that the burden of reasonable preponderance of the evidence has been ■met and the plaintiff should be compensated. * * * However, the Court must take each case on its own set of facts in this regard, and the facts in this case preponderate in favor of the defendants. The medical evidence in this case is not to the effect that the doctors could not say that the disability was not caused by the accident, but actually here the doctors testified that .the aneurism was not caused by the accident. * * * ” (Emphasis supplied.)
There were only three medical witnesses who testified in the case. Dr. Puneky, the internist, testified on behalf of plaintiff. Dr. Gidman, the general surgeon, and Dr. Levy, the neuro-surgeon, testified on behalf of defendants.
Dr. Puneky stated that he was called to plaintiff’s house on the night of September 25, 1958 to “treat the headache and prescribe for this cold or cough he was having,” and found him “complaining of severe headache; he said he had been having the headache for several days but on this particular day he coughed and he noticed a ‘severe tearing sensation’ in his head and this pain radiated to both eye sockets and it was more severe on the left side.” He also complained of blurring vision on the left side and drooping of the left eyelid. His blood pressure was 170/100 on that night.
In connection with the coughing spell of September 25th we note the following language in the history given by plaintiff on October 12th upon his admission to Charity Hospital.
“41 yr. old welder & pipefitter, rt. handed whose illness dates to 2 wks. ago with rather sudden onset of sharp pain in left temporal area posterior to orbit just after coughing. This temporal headache has remained to date and is throbbing in nature, (with each heartbeat).
“About 2 days following this he began to see double, objects ‘seeming’ to lean towards the left. Following this his left lid collapsed & has remained so to date * * * ”
Dr. Puneky testified that an aneurism is a swelling or puffing out in an artery due to an inborn weakness in the wall of the artery and can be precipitated by an increase of blood pressure. He further testified that “it is possible” for there to be a rise in blood pressure as the result of a blow, or an accident, or something of that nature due to an increase in the flow *846 of adrenalin which normally occurs in the period of an accident. But on cross-examination Dr. Puneky stated that as a rule when a person is injured there is a sudden spurt of adrenalin created in the body but when the alarm is over there is usually a let down, and that the reduction of blood pressure from the effects of the adrenalin should take place within a matter of hours after an injury. Finally Dr. Puneky testified as follows:
“Q. Do you have any opinion about the cause of this aneurism?
A. I could not comment one way or the other.”
He also testified that the explanation of what caused plaintiff’s aneurism would best be answered by an expert neurologist.
Dr. Gidman and Dr. Levy, defendants’ medical witnesses, were most explicit. Dr. Gidman when asked about his opinion on the causal relationship, said this:
“Q. As a general surgeon, do you have any opinion about any relationship between Mr. Day’s injury and this aneurism for which he was treated at Charity Hospital?
A. I would say there is not any relationship.”
Dr. Levy, the expert neuro-surgeon who supervised plaintiff’s treatment at Charity Hospital, expressed the following opinion:
“A. After reviewing the file which was submitted to me * * * it was my understanding that Mr. Day had an injury to his left foot * * * and that the symptoms relative to the aneurism for which I saw him at Charity Hospital occurred eight (8) days thereafter, based on the records which were submitted to me plus the Charity Hospital records, it is my opinion there was no causal relationship or aggravation by his injury of September 17, 1958.” (Emphasis supplied.)
Plaintiff attempted to show by hypothetical questions put to Drs. Gidman and Levy on cross examination that an accident could cause an increased excretion of adrenalin which in turn could cause a rise in the injured person’s blood pressure which in turn could cause an aneurism. Although both doctors admitted that this was possible in a hypothetical case, both of them testified that in their opinion plaintiff’s aneurism was not caused in this manner. All of the medical witnesses testified that any rise in blood pressure as the result of an accident would be purely temporary and would usually be followed by a drop in pressure causing shock in severe cases.
There is no proof in the record that plaintiff’s blood pressure became elevated as a result of the accident. When Dr. Gid-man saw him immediately after the accident he did not take his blood pressure because his injuries were minor and he did not appear excitable or apprehensive. There is no record of plaintiff’s blood pressure until Dr. Puneky took it eight days after the accident following the coughing spell which caused a “severe tearing sensation” in plaintiff’s head.
Plaintiff seeks to prove his case through a theory that a probable increase of blood pressure as the result of the accident could have been enough to begin the bulge in the weakest part of the artery which later could have been further dilated by the coughing spell. This theory finds no support in the medical testimony. Dr. Levy testified that an aneurism occurs within a matter of minutes or hours, at best, following the precipitating cause; that an aneurism occurs explosively and not gradually and that if plaintiff’s aneurism had occurred as the result of the accident of September 17, 1958 the symptoms would have manifested themselves in a matter of minutes or hours — within 24 hours at the latest. Dr. Levy further testified that since plaintiff’s symptoms did not appear until eight days after the accident there *847 was no causal connection between the accident and the aneurism.
After carefully reviewing the record we find ourselves in thorough agreement with the views expressed by the Trial Judge.
For the foregoing reasons the judgment appealed from is affirmed; costs of this appeal to be borne by plaintiff-appellant.
Affirmed.